## Case No. 12,347.

### The SARAH HARRIS.

[13 Blatchf. 503.] [1]

Circuit Court, E. D. New York. Aug. 16, 1876.[2]

MARITIME LIEN — SALE BY MASTER — SUPPLIES — PURCHASER.

Where supplies are furnished to a vessel in a foreign port, on the order of a person who is in the actual command and possession of her, as master, by a person who has no notice of any circumstances to raise a suspicion as to the authority of such master, a lien on the vessel is created, even as against a former owner of the vessel who claims that she was sold in fraud of his rights, and that the purchaser at such sale placed such master in command of her.

[Appeal from the district court of the United States for the Eastern district of New York.]

In admiralty.

Goodrich & Wheeler, for libellant.
Edward D. McCarthy, for claimants.

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]
[2] [Affirming Case No. 12,345.]

HUNT, Circuit Justice. On the 1st of December, 1870, the brig Sarah Harris sailed from Annapolis, Nova Scotia, on a voyage to Montevideo, South America. The brig was owned by John Harris and Richard Jones, who were residents of Annapolis aforesaid, and then living. On the 23d of January, 1871, the brig put into St. Thomas, in distress. Under judicial proceedings there had, the brig was condemned to be sold, was sold, and was purchased by Captain Fullmore and by Loran Cochran. If there was fraud in such proceedings, the libellant was not a party thereto, or cognizant of the same. Terence Cochran was put in command of the brig by such purchasers, and, at his request, as master, repairs were made upon her, and materials and supplies furnished to her, by the libellant, to the amount of $770, in gold. A portion of this was paid, but a portion, amounting to $340, has never been paid, and remains due to the libellant. Neither the said Fullmore, Terence Cochran, nor Loran Cochran were residents or citizens of St. Thomas, when the said materials and repairs were furnished, but were temporarily at St. Thomas.

The district judge ordered judgment in favor of the libellant for the amount of his claim, with interest and costs. [Case No. 12,345.] He held, that "the evidence presents all the facts necessary to give to the libellant a maritime lien upon the vessel proceeded against, for the repairs and supplies furnished by him." To this the appellants object, on the ground, that, at the time of making the repairs, the Sarah Harris was not in a foreign port. The lien claimed can only arise when that fact exists. The Lottawanna, 21 Wall. [88 U. S.] 558.

The libel alleges, that the brig was "a vessel foreign to the port of St. Thomas, and standing in need of repairs and supplies," when the supplies, &c., were furnished. In answer, Harris alleges himself to be of Nova Scotia, and to be the true owner of the brig, and that no other person is the owner thereof. In the amended answer, Harris and Jones, describing themselves as of Nova Scotia, and as "owners and claimants of the brig Sarah Harris," make various denials and allegations, not touching this point. When an allegation is made upon the one side, and expressly conceded upon the other, it is to be assumed to be true.

It is argued, again, that the evidence shows that the sale made of the vessel, under judicial proceedings, resulted in a purchase of her by Fullmore and Cochran; that Terence Cochran was appointed her master by these purchasers; and that the supplies and repairs furnished were upon his order, as such master. It is argued, further, that this sale was fraudulent as to Harris and Jones, that Terence was not their agent or representative, and, hence, that the vessel is not bound for such supplies. This argument would be cogent in a contest between Fullmore and Cochran, on the one side, and Harris and Jones personally, on the other. It is unsound when applied to the present libellant. The proof shows, that, if there was fraud, he was neither party nor privy to it. If there was collusion between Jollymore, the master appointed by Harris and Jones, and the board of surveyors and purchasers at St. Thomas, the libellant neither participated in it, nor had knowledge of it. He made the repairs to the vessel, and furnished the supplies and materials, upon the requisition of the person in command of her, without knowledge that his authority was or could be questioned. He gave credit to the vessel. Whether the vessel is still owned by the claimants, as they insist, or whether she is owned by the purchasers at St. Thomas, she was, at the time in question, a vessel in a foreign port, and the supplies furnished create a lien upon her for the payment of their value. One who repairs a vessel, or furnishes materials, may do so upon the order of the person in actual command and possession of the vessel, if there are no circumstances creating a suspicion of his right. To require a master to prove the title to his vessel, and his authority to command her, as a condition of credit to a ship, would often involve great difficulty, and would add an unnecessary embarrassment to the law of maritime liens. 2 Pars. Shipp. & Adm. pp. 7, 9, 329. Several cases from East's Reports are cited to the contrary. Upon examination, I find them all to be cases where a personal claim was made against the alleged owner of the vessel. In that case, actual ownership must be established. They furnish no authority as to the existence of a lien on the vessel. The judgment of the district court must be affirmed.